IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TOBIN COPELAND-TURNER,

        Plaintiff,

    v.                            No.  CV-11-37-HZ

WELLS FARGO BANK, N.A., a foreign
bank, GORILLA CAPITAL, INC., a            OPINION & ORDER
foreign corporation, and NANCY K.
CARY, an individual,

        Defendants.

Alex Golubitsky
CASE & DUSTERHOFF, LLP
The 9800 Professional Building
9800 S.W. Beaverton Hillsdale Hwy., Suite 200
Beaverton, Oregon 97005

      Attorney for Plaintiff

1 - OPINION & ORDER

Robert J. Bocko
KEESAL, YOUNG  & LOGAN
1301 Fifth Avenue, Suite 1515
Seattle, Washington 98101

    Attorney for Defendant Wells Fargo Bank

HERNANDEZ, District Judge:

    Plaintiff Tobin Copeland-Turner filed this action in Multnomah County Circuit Court against defendants Wells Fargo Bank, N.A., Gorilla Capital, Inc., and Nancy Cary.  Defendants removed the action to this Court on January 12, 2011.  Plaintiff moves to remand the action back to state court.  I deny the motion.

BACKGROUND

    The facts are taken from the Complaint filed in state court.  In October 2005, plaintiff executed a note in the amount $150,000, and a deed of trust on property located in Eugene, which secured the note.  Compl. at ¶ 2.  The lender, World Savings Bank (WSB), was the beneficiary of the "Security Agreement."  Id.  First American Title Insurance Company of Oregon (FATICO) is the trustee under the trust deed.  Defendant Cary is the successor trustee.  Id.  WSB is the assignee of the note and trust deed.  Id.  On information and belief, Wachovia purchased WSB, and Wells Fargo purchased Wachovia.  Id.  Cary was acting as an agent for Wells Fargo.  Id.

    On March 31, 2010, plaintiff was served with a "Notice of Default and Election to Sell under the Terms of a Trust Deed," stating that the property would be sold at auction on August 26, 2010.  Id. at ¶ 3.  Plaintiff contacted Wachovia, and began a loan modification process for the property.  Id.

2 - OPINION & ORDER

Plaintiff applied for a loan modification on July 15, 2010. <u>Id.</u> at ¶ 4. Wachovia told plaintiff that the foreclosure process would be stopped, and that the foreclosure sale had been postponed until March 11, 2011. <u>Id.</u>

On October 13, 2010, Wachovia told plaintiff the loan modification request had been denied, but that plaintiff had thirty days to re-apply for the modification, during which time the foreclosure sale would not occur. <u>Id.</u> at ¶ 5. Wachovia reiterated that the foreclosure would not occur until March 11, 2011. <u>Id.</u>

Wells Fargo sold the property at auction on October 27, 2010. <u>Id.</u> at ¶ 6. Plaintiff had been assured by Wachovia, acting for Wells Fargo, that the property would not be foreclosed upon until November 13, 2010. <u>Id.</u> at ¶ 6.[1]

Based on these facts, plaintiff brings the following claims: (1) breach of contract, (2) breach of contract - third party beneficiary, (3) unlawful trade practices in violation of the Oregon Unlawful Trade Practices Act, Oregon Revised Statute §§ (O.R.S.) 646.605 - 646.656, (4) fraud, (5) negligent misrepresentation, (6) wrongful foreclosure, and (7) violation of O.R.S. 86.737 (regulating notices required by the sender of a notice of sale after recording a notice of default). Plaintiff seeks a complete rescission of the foreclosure sale, an injunction prohibiting further sale and encumbrance on the property, $145,000 in damages if the sale is not rescinded, at least $200 in damages for the unlawful trade practices, punitive damages, attorney's fees, and costs.

## STANDARDS

Generally, "any civil action brought in a State court of which the district courts of the

---

[1] Paragraph 5 of the Complaint and Paragraph 6 of the Complaint contain inconsistent allegations regarding the dates Wachovia represented to plaintiff regarding the foreclosure.

United States have original jurisdiction, may be removed by the defendant or the defendants, to

the district court of the United States for the district and division embracing the place where such

action is pending."  28 U.S.C. § 1441(a); Matheson v. Progressive Spec. Ins. Co., 319 F.3d 1089,

1090 (9th Cir. 2003) ("Any civil action may be removed to federal district court so long as

original jurisdiction would lie in the court to which the case is removed").  Furthermore, "[a]ny

civil action of which the district courts have [federal question jurisdiction] shall be removable

without regard to the citizenship or residence of the parties."  28 U.S.C. § 1441(b).

The burden of establishing federal jurisdiction is on the removing party, and the removal

statute is strictly construed against removal jurisdiction.  Hunter v. Philip Morris USA, 582 F.3d

1039, 1042 (9th Cir. 2009); Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir.

2006).

Remand is governed by 28 U.S.C. § 1447(c) which provides, in pertinent part, that

[a] motion to remand the case on the basis of any defect other than lack of subject
matter jurisdiction must be made within 30 days after the filing of the notice of
removal under section 1446(a).  If at any time before final judgment it appears
that the district court lacks subject matter jurisdiction, the case shall be remanded.
An order remanding the case may require payment of just costs and any actual
expenses, including attorney fees, incurred as a result of the removal.

28 U.S.C. § 1447(c).

## DISCUSSION

Plaintiff moves to remand the action, arguing that his Complaint presents no federal

question as required by section 1441(b).  Plaintiff also seeks an award of costs and attorney's fees

pursuant to section 1447(c).

This dispute focuses on whether plaintiff's second claim for relief, alleging that plaintiff is

the third-party beneficiary of a contract and that he suffered harm as a result of the contract's

breach by Wells Fargo, is a federal cause of action, capable of establishing federal question

jurisdiction.  In support of that claim, plaintiff re-alleges all of his prior allegations, recited

above, and adds the following allegations:  before the foreclosure sale by Wells Fargo, Wells

Fargo entered into a contract with the Federal National Mortgage Association (Fannie Mae), a

federally chartered corporation and financial agent of the United States, entitled "Commitment to

Purchase Financial Instrument and Servicer Participation Agreement for the Home Affordable

Modification Program [HAMP] under the Emergency Economic Stabilization Act of 2008" ("the

Contract").  Compl. at ¶ 14.  Under the Contract, as a condition precedent to receiving federal

money under the Troubled Asset Relief Program (TARP), Wells Fargo is required to provide

mortgage relief to individuals who are in need of a loan modification and who meet the eligibility

requirements.  Id. at ¶ 15.  Wells Fargo is bound by the terms of the Contract with the federal

government and has a contractual obligation not to breach those terms.  Id. at ¶ 16.

　　　Plaintiff further alleges that the general purpose and intent of the federal government in

entering the Contract with Wells Fargo was to stabilize the housing market in the United States

and to offer assistance to struggling homeowners by reducing their mortgage payments and

preventing avoidable foreclosures.  Id. at ¶ 17.  Therefore, plaintiff asserts, third-party

beneficiaries of the Contract are those homeowners who face foreclosure but qualify for a

mortgage modification under the HAMP.  Id.

　　　Plaintiff alleges that before the foreclosure sale, he was eligible for a mortgage

modification under the applicable guidelines.  Id. at ¶ 18.  He contends that to effectuate the

intent of the parties, as indicated by the Contract and its surrounding circumstances, the right of

5 - OPINION & ORDER

the third-party beneficiary under the Contract must be recognized. Id. at ¶ 19. He contacted Wells Fargo, through Wachovia, to negotiate his loan modification and thereby vested his rights as a third-party beneficiary. Id. at ¶ 20. In accordance with the terms of the Contract between Wells Fargo and the federal government, by taking TARP money, Wells Fargo must modify mortgages of those eligible for modifications. Id. at ¶ 21. As a third-party beneficiary of the Contract, plaintiff has the right against Wells Fargo to directly enforce the promise. Id. at ¶ 22. Plaintiff contends that Wells Fargo breached the contract and plaintiff has the right to pursue injunctive relief and specific performance for that breach. Id. at ¶ 23.

Wells Fargo argues that the third-party beneficiary breach of contract claim alleges a breach of a contract with the United States government that is expressly governed by and construed under federal law and not the law of any state or locality. As such, the case was properly removed based on federal question jurisdiction. Wells Fargo notes that in several allegations of the Complaint, plaintiff affirmatively alleges facts establishing that Wells Fargo entered into the contract with the federal government. Wells Fargo contends that these allegations demonstrate that plaintiff's claim is based on a contract between Wells Fargo and the federal government.

Additionally, Wells Fargo cites to the Contract itself, a copy of which is Exhibit A to defense counsel's declaration. The Contract's first page states that it "is entered into as of the Effective Date, by and between [Fannie Mae], a federally chartered corporation, as financial agent of the United States and [Wells Fargo]." Exh. A to Bocko Declr. at p. 4. It also states that the "U.S. Department of the Treasury (the 'Treasury') has established [HAMP] pursuant to [] the Emergency Economic Stabilization Act of 2008, . . . .[and] Fannie Mae has been designated by

the Treasury as a financial agent of the United States in connection with the implementation of

the [HAMP and other new programs to stabilize the housing market]; all references to Fannie

Mae in the Agreement shall be in its capacity as financial agent of the United States[.]" Id.  The

Contract further expressly states that it "shall be governed by and construed under Federal law

and not the law of any state or locality[.]" Id. at p. 15.

Wells Fargo contends that whether examining the language of the claim as pleaded by

plaintiff in his Complaint, or the actual Contract, it is clear that this is a claim alleging the breach

of a contract between Wells Fargo and the federal government which is controlled by federal law.

Plaintiff argues that his Complaint raises no federal question.  Plaintiff states that he has

alleged that Fannie Mae made this contract with Wells Fargo "under the direction" of the United

States, but he maintains that he has not alleged that the claim arises under federal common law or

federal statutory law.  He further states that determining whether he is a third-party beneficiary to

this Contract does not present a federal question.  He states that his claim makes no reference to

any federal law.  Plaintiff suggests that this is not a suit against the federal government and that

he could not have filed this action in federal court.  In his memorandum in support of remand, he

describes his Complaint this way:

> The initial paragraph of the Complaint regarding whether Plaintiff is a third party
> beneficiary to the agreement between Fannie Mae and Wells Fargo states, in no
> uncertain terms, that the agreement is between Fannie Mae and Wells Fargo.
> While the Plaintiff subsequently states that Wells Fargo received federal money
> and that the contract is a federal contract, these claims are colored by the initial
> description of the contract.

Pltf Reply Mem. at p. 2.

Plaintiff relies on a 1997 Fifth Circuit case for the proposition that Fannie Mae and

7 - OPINION & ORDER

Freddie Mac are not agencies of the federal government.  There, the court held that a contract between the defendant underwriters and Fannie Mae/Freddie Mac as issuers of certain securities, was not a contract between the defendants and the United States because, at that time, Fannie Mae and Freddie Mac were "both shareholder-owned corporations in which the United States has no ownership interests."  Frank v. Bear Stearns & Co., 128 F.3d 919, 923 (5th Cir. 1997).  Thus, the defendants' contracts with Fannie Mae and Freddie Mac were not "government contracts" and the United States was not a party to them.  Id. at 924.  As a result, the case did not concern rights or obligations of the United States as required for the creation of federal common law.  Id.

The federal question jurisdiction statute vests in federal district courts "original jurisdiction" over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  A case "'arises under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 690 (2006)  (quoting Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 27-28 (1983)).

In County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237 (9th Cir. 2009), cert. granted, 79 U.S.L.W 3193 (U.S. Sept. 28, 2010)  (No. 09-1273), a case relied on by Wells Fargo, medical clinics which were able to buy prescription drugs at discounted prices from manufacturers under a standardized Pharmaceutical Pricing Agreement (PPA), between the government and drug manufacturers, alleged that they were third-party beneficiaries of the contract, and sued the drug companies for breach of contract.  The court ruled that the plaintiffs were third-party

beneficiaries of the PPA, and recognized a federal common law claim for breach of contract even though the statute that created the PPA program did not create a private right of action.

The court explained that federal law controlled the interpretation of the PPA, which was "a contract entered into pursuant to federal law and to which the government is a party[.]" Id. at 1243 (internal quotation omitted). The PPA expressly provided that it was to be construed in accordance with federal common law. Id. In discussing its jurisdiction, the court explained that

> regardless of whether federal or state law creates the cause of action underlying . . . the contract claim, . . . it necessarily raise[d] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities and so was properly heard by the district court in the exercise of its 28 U.S.C. § 1331 federal question jurisdiction.

Id. at 1243 n.5 (internal quotation and citations omitted). The court further explained that the plaintiff sought enforcement "of an obligation created by a nationwide federal contract whose terms are mandated by federal statute and which must be interpreted according to federal law." Id. Thus, the claim "implicates the government's interests in the uniform administration of the [program] and the parties' compliance with federal law." Id. (internal quotation omitted).

Wells Fargo argues that the same reasoning applies here. The Contract was entered into pursuant to a federal statute, the United States is a party to it, and it expressly provides that it is governed exclusively by federal law.

Based on Astra, a claim by plaintiff that he is the third-party beneficiary of a contract between Wells Fargo and the federal government would meet the "arising under" prong of section 1331 because the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law. Several other district courts have reached this conclusion.

9 - OPINION & ORDER

E.g., Phipps v. Wells Fargo Bank, N.A. No. CV F 10-2025 LJO SKO, 2011 WL 302803, at *6 (E.D. Cal. Jan. 27, 2011) ("Federal law controls the interpretation of a contract entered into pursuant to federal law and to which the United States is a party"); Marques v. Wells Fargo Home Mortg., Inc., No. 09-cv-1985-L(RBB), 2010 WL 3212131, at *3  (S.D. Cal. Aug. 12, 2010) (same; further noting that where contract at issue provided that it was governed by and was to be construed under federal law, the issue of whether the plaintiff was a third-party beneficiary of the contract was determined by federal law); Hammonds v. Aurora Loan Serv. LLC, No. EDCV 10-1025 AG (OPx), 2010 WL 3859069, at *2 (C.D. Cal. Sept. 27, 2010) ("Federal law controls the interpretation of the HAMP contract [because] [w]hen a contract is entered into under federal law and one party is the United States, federal law applies").

    Thus, the issue is whether plaintiff's Complaint alleges that the Contract is between Wells Fargo and the federal government.  I find that it does.  As Wells Fargo notes, plaintiff himself affirmatively alleges that Fannie Mae was a party to the contract as a "federally chartered corporation and financial agent of the United States." Compl. at ¶ 14.  Plaintiff alleges that "Wells Fargo is bound by the terms of the Contract with the federal government." Id. at ¶ 16 (emphasis added).  He further alleges that the "general purpose and intent of the federal government . . . in entering the Contract with Defendant Wells Fargo was to stabilize . . . " Id. at ¶ 17.  He also reiterates that the contract was "between Defendant Wells Fargo and the federal government[.]" Id. at ¶ 21.

    Even without considering any additional evidence, the Complaint sufficiently alleges that the Contract is between Wells Fargo and the federal government.  Thus, under Astra, it presents a federal question, properly subject to removal.

Although I need go no further to resolve the motion, Wells Fargo requests that I take judicial notice pursuant to Federal Rule of Evidence 201, of the actual Contract itself, as well as four other documents: (1) a Statement of Federal Housing Finance Agency (FHFA) Director James Lockhart dated September 7, 2008, (2) a September 7, 2008 fact sheet from the United States Department of the Treasury regarding a "Treasury Senior Preferred Stock Purchase Agreement," (3) a copy of FHFA's home page from its website, and (4) excerpts from the Treasury Department's "Performance and Accountability Report" for fiscal year 2010.  Exhs A-E to Bocko Declr.

A judicially noticed fact

must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Fed. R. Evid. 201(b).

Plaintiff contends that consideration of these documents is inappropriate in the context of analyzing a motion to remand because, under the "well-pleaded complaint rule," the evaluation of his claim is limited to the contents of his Complaint.  The "'well-pleaded complaint rule" provides that "[w]hether a case is one arising under the Constitution or a law or treaty of the United States . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant might interpose.'"  Lippitt v. Raymond James Fin. Serv., Inc., 340 F.3d 1033, 1040 (9th Cir. 2003) (quoting Taylor v. Anderson, 234 U.S. 74, 75-76, (1914)); see also Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (well-pleaded

complaint rule provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint).

The rule applies in evaluating whether a complaint removed to federal court raises a federal question.  See Konty v. Liberty Life Assur. Co. of Boston, No. CV-10-320-MO, 2010 WL 2608290, at *1 (D. Or. June 24, 2010) ("[i]n analyzing a motion to remand, federal courts begin with a fundamental tenet of federal jurisdiction-the 'well pleaded complaint' rule") (internal quotation omitted).

I found no Ninth Circuit cases expressly discussing whether a court may take judicial notice of documents in analyzing a motion to remand where the issue is whether the complaint presents a federal question.  However, analogous issues within the context of removal jurisdiction and motions to remand, and within the context of motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), persuade me that judicially noticing the documents submitted by Wells Fargo is appropriate.

Consideration of evidence outside the complaint is permissible in a remand motion when analyzing "fraudulent joinder," where a plaintiff names a resident defendant in an attempt to prevent removal based on diversity jurisdiction.  E.g., Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067, 1068 (9th Cir. 2001) ("Joinder of a  non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state. . . . [t]he defendant is entitled to present the facts showing the joinder to be fraudulent. . . . Fraudulent joinder claims may be resolved by piercing the pleadings and considering summary judgment-type evidence such as affidavits and deposition

testimony.") (internal quotations and brackets omitted); <u>see also</u> <u>In re Briscoe</u>, 448 F.3d 201,

220-21 (3d Cir. 2006) (in fraudulent joinder issue, no reason to preclude the district court from

considering reliable evidence that the defendant may proffer to support the removal; such

evidence may include relevant matters properly subject to judicial notice).

 Similarly, the court may consider documents outside of the complaint in analyzing

remand motions when the issue is whether a plaintiff has used the "artful pleading doctrine" in a

complete preemption case. <u>E.g.</u>, <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 704 (9th Cir.1998)

("Because complete preemption often applies to complaints drawn to evade federal jurisdiction, a

federal court may look beyond the face of the complaint to determine whether the claims alleged

as state law causes of action in fact are necessarily federal claims"), <u>superseded by statute on</u>

<u>other grounds as stated in</u> <u>Abrego Abrego</u>, 443 F.3d at 681.

 In the analogous situation of a Rule 12(b)(6) motion to dismiss for failure to state a claim,

where the court's review is limited to the contents of the complaint, it is appropriate to consider

facts not in the complaint if they may be judicially noticed under Rule 201, are incorporated by

reference by the plaintiff, or are matters of public record. <u>E.g.</u>, <u>Dunn v. Castro</u>, 621 F.3d 1196,

1204 n.10 (9th Cir. 2010) (when considering a Rule 12(b)(6) motion, district court generally may

not take into account material beyond the complaint, but exceptions are made for matters of

which the court may take judicial notice, and documents the plaintiff "incorporates by

reference"); <u>Coto Settlement v. Eisenberg</u>, 593 F.3d 1031, 1038 (9th Cir. 2010) (in Rule 12(b)(6)

motion court "may consider materials incorporated into the complaint or matters of public

record"). The incorporation by reference doctrine allows the court to consider documents "in

situations where the complaint necessarily relies upon a document or the contents of the

13 - OPINION & ORDER

document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." Coto Settlement, 593 F.3d at 1038.

Additionally, several district courts have, with no discussion, judicially noticed facts in the context of analyzing a motion to remand outside the fraudulent joinder or artful pleading/complete preemption contexts. E.g., Aniel v. TD Serv. Co., No. C 10-05323 WHA, 2011 WL 109550, at *3 (N.D. Cal. Jan. 13, 2011) (in determining motion to remand, court took judicial notice of court orders and judgment in prior case because these were public records); Deutsche Bank Nat. Trust Co. v. Sitanggang, No. 1:09cv01835 AWI DLB, 2010 WL 144439, at *1 n.1 (E.D. Cal. Jan. 11, 2010) (granting motion for judicial notice filed by the plaintiff in support of motion to remand); Flower v. Wachovia Mortg. FSB, No. C 09-343 JF (HRL), 2009 WL 975811, at *2-3 (N.D. Cal. Apr. 10, 2009) (in analyzing a motion to remand, court took judicial notice of Office of Thrift Supervision documents regarding the corporate structure of Wells Fargo and Wachovia to determine the citizenship of the defendant corporation).

In this case, consideration of the actual Contract is warranted under the "incorporation by reference" doctrine, under Rule 201 governing judicial notice, and because they are public documents. Plaintiff cites to the document and necessarily relies on it in pleading his third-party beneficiary contract claim. The contents of the Contract cannot be reasonably questioned. Additionally, the document is a public record and its authenticity is not disputed.

When the Contract itself is considered, it becomes even more clear that plaintiff's second claim for relief arises under federal law because the Contract expressly provides that it "shall be governed by and construed under Federal law and not the law of any state or locality[.]" Exh. A to Bocko Declr. at p. 15.

14 - OPINION & ORDER

As to the other documents Wells Fargo relies on, they are relevant to Wells Fargo's argument that <u>Bear Stearns</u> is no longer good law for the proposition that Fannie Mae is not a government entity. Again, while I conclude that plaintiff alleges the existence of a contract with the federal government based on the allegations in the Complaint alone, I address Wells Fargo's argument as an alternative basis to my conclusion.

According to the documents submitted by Wells Fargo, in 2008, FHFA placed Fannie Mae and Freddie Mac into conservatorship with FHFA as conservator. Exh. B to Bocko Declr. (FHFA Director Lockhart statement dated September 8, 2008). As a result, FHFA has "succeed[ed] to all rights, titles, powers, and privileges of [Fannie Mae], and of any stockholder, officer, or director of [Fannie Mae] with respect to [Fannie Mae] and the assets of [Fannie Mae]," and is empowered to "take over the assets of and operate [Fannie Mae] with all the powers of the shareholders, the directors, and the officers of [Fannie Mae] and conduct all business of [Fannie Mae]." 12 U.S.C. §§ 4617(b)(2)(A)(i), (B)(i).

Simultaneously with the conservatorship, the Treasury Department entered into contracts with Fannie Mae and Freddie Mac to purchase "senior preferred stock" as a means of providing government funds to avoid receivership and to provide housing market stability. Exh. C to Bocko Declr (Sept. 7, 2008 Treasury Department Fact Sheet). As of September 30, 2010, "Treasury's gross investment in Fannie Mae and Freddie Mac were $85.9 billion and $63.9 billion, respectively." Exh. D to Bocko Declr. (Treasury Perf. & Accountability Report).

Wells Fargo argues that <u>Bear Stearns</u> is not applicable here where not only did Fannie Mae sign the contract as the financial agent for the federal government, but the evidence shows that the United States is now a senior shareholder of Fannie Mae.

15 - OPINION & ORDER

I agree with Wells Fargo and judicially notice the public documents Wells Fargo submits. Plaintiff does not challenge their accuracy or their authenticity.  As a result, I agree with Wells Fargo that the holding in <u>Bear Stearns</u> that contracts with Freddie Mac and Fannie Mae were not "government contracts," is no longer valid.

In summary, the motion to remand is denied because, even though removal jurisdiction is strictly construed, the facts as alleged by plaintiff in support of his third-party beneficiary claim establish that the Contract is one between Wells Fargo and the federal government.  As a result, it presents a federal question under section 1331 as recently explained in <u>Astra</u>.

Additionally, the law supports judicially noticing the facts presented by Wells Fargo in opposition to the motion to remand.  Other district courts have taken judicial notice of similar facts in deciding motions to remand, and in the analogous situation of considering a Rule 12(b)(6) motion, judicial notice is appropriate, as is reliance on the incorporation by reference doctrine which is relevant here to the Contract itself.

CONCLUSION

Plaintiff's motion to remand [5] is denied.  Wells Fargo's responsive pleading to plaintiff's Complaint is due twenty (20) days after the date of this Opinion.

IT IS SO ORDERED.

Dated this 17th day of March, 2011.

/s/ Marco A. Hernandez
Marco A. Hernandez
United States District Judge

16 - OPINION & ORDER