IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TOBIN COPELAND-TURNER,

        Plaintiff,

    v.                             No.  CV-11-37-HZ

WELLS FARGO BANK, N.A., a foreign
bank, GORILLA CAPITAL, INC., a            OPINION & ORDER
foreign corporation, and NANCY K.
CARY, an individual,

        Defendants.


Alex Golubitsky
CASE & DUSTERHOFF, LLP
The 9800 Professional Building
9800 S.W. Beaverton Hillsdale Hwy., Suite 200
Beaverton, Oregon 97005

     Attorney for Plaintiff


1 - OPINION & ORDER

Robert J. Bocko
KEESAL, YOUNG  & LOGAN
1301 Fifth Avenue, Suite 1515
Seattle, Washington 98101

     Attorney for Defendant Wells Fargo Bank

HERNANDEZ, District Judge:

     Plaintiff Tobin Copeland-Turner brings this foreclosure-related action against defendants Wells Fargo Bank, N.A., Gorilla Capital, Inc., and Nancy Cary.  Plaintiff initially brought several claims, but in his Amended Complaint he brings a single claim for conversion, based on three different theories as explained below.  Wells Fargo moves to dismiss or for summary judgment. I grant the motion.

BACKGROUND

     The following facts are taken from the Amended Complaint.  In October 2005, plaintiff executed a Promissory Note in the amount of $150,050, and a Deed of Trust on property located in Eugene, which secured the Note.  Am. Compl. at ¶ 2.  The lender, World Savings Bank, F.S.B. (WSB), was the beneficiary of the "Security Agreement."  Id.  First American Title Insurance Company of Oregon was the original trustee under the Deed of Trust.  Defendant Cary is the successor trustee.  Id.  On information and belief, Wachovia purchased WSB, and Wells Fargo purchased Wachovia.  Id.  Cary acted as an agent for Wells Fargo.  Id.

     On March 31, 2010, plaintiff was served with a "Notice of Default and Election to Sell under the Terms of a Trust Deed," stating that the property would be sold at auction on August 26, 2010.  Id. at ¶ 3.  Plaintiff contacted Wachovia and applied for a loan modification on July 15, 2010.  Id. at ¶ 4.  Wachovia told plaintiff that the foreclosure process would be stopped, and

2 - OPINION & ORDER

that the foreclosure sale had been postponed until March 11, 2011.  Id.

On October 13, 2010, Wachovia denied the loan modification request, but a Wachovia representative told plaintiff he had thirty days to re-apply for the modification, during which time the foreclosure sale would not occur.  Id. at ¶ 5.  Wachovia reiterated that the foreclosure sale would not occur until March 11, 2011.  Id.   Nonetheless, it sold the property at auction on October 27, 2010.  Id. at ¶ 6.

Based on these facts, plaintiff brings a claim of conversion, based on three separate theories:  (1) WSB was the named beneficiary in the Deed of Trust and thus, because neither Wells Fargo nor Wachovia were the named beneficiaries of the Deed of Trust, the Deed of Trust and subsequent notice of sale were invalid; Am. Compl. at ¶ 11[1]; (2) Cary was not the successor trustee when the notice of default was issued, invalidating the notice of default; Id. at ¶ 12; and (3) Wachovia, acting as an agent for Wells Fargo, told plaintiff that the foreclosure sale scheduled for October 27, 2010 was postponed and that plaintiff could apply for a loan modification to stop that sale at any point before November 13, 2010.  Id. at ¶¶ 8-10.

## STANDARDS

I.  Dismissal

On a motion to dismiss, the court must review the sufficiency of the complaint.  Scheuer

---

[1]  In his Response Memorandum, plaintiff articulates this part of the claim in a slightly different fashion.  There, he states that Oregon Revised Statute § (O.R.S.) 87.735(1) was violated because Wells Fargo's beneficial interest in the mortgage was by an unrecorded assignment and therefore, Wells Fargo had no right to "take" the property;  Resp. Mem. at p. 2.  As I understand plaintiff's position, he contends that WSB is the beneficiary of the Deed of Trust and to the extent Wells Fargo acted as the beneficiary in the foreclosure process, its actions were invalid because any assignment of the beneficiary interest by WSB to Wells Fargo was required to be recorded and it was not.

3 - OPINION & ORDER

v. Rhodes, 416 U.S. 232, 236 (1974).  All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  American Family Ass'n, Inc. v. City & County of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).  However, the court need not accept conclusory allegations as truthful.  Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

A motion to dismiss under Rule 12(b)(6) will be granted if plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]"  Id. (citations and footnote omitted).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted).  Additionally, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 1950.  The complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct."  Id.

II.  Summary Judgment

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court views inferences drawn from the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. Long v. City & County of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

DISCUSSION

Wells Fargo moves to dismiss the Amended Complaint on the basis that plaintiff's conversion claim is preempted by federal law.[2] Alternatively, Wells Fargo moves for summary

---

[2] As pleaded in the Amended Complaint, plaintiff brings a claim for conversion. Although I have recently concluded that claims based on an alleged wrongful foreclosure of real property cannot be considered conversion claims because real property is not chattel, Rapacki v.

judgment on the merits of the claims.

I.  Preemption

Congress enacted the Home Owners' Loan Act of 1933, 12 U.S.C. §§ 1461-1468

(HOLA), in order to "charter savings associations under federal law, at a time when record

numbers of home loans were in default and a staggering number of state-chartered savings

associations were insolvent."  Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004 (9th Cir.

2008).  "HOLA was designed to restore public confidence by creating a nationwide system of

federal savings and loan associations to be centrally regulated according to nationwide 'best

practices.'"  Id.  The Ninth Circuit has explained that HOLA and its implementing regulations are

"a radical and comprehensive response to the inadequacies of the existing state system, and so

pervasive as to leave no room for state regulatory control. . . . Because there has been a history of

significant federal presence in national banking, the presumption against preemption of state law

is inapplicable."  Id. at 1004-05 (citation, internal quotation, and brackets omitted).

As part of HOLA, Congress gave the Office of Thrift Supervision (OTS) "broad authority

to issue regulations governing thrifts."  Id. at 1005 (citing 12 U.S.C. § 1464).  OTS in turn

promulgated a preemption regulation published at 12 C.F.R. § 560.2.  See Id. (explaining that the

fact that the preemption is expressed in OTS's regulation instead of HOLA itself is immaterial).

The regulation reads, in pertinent part:

_____

Chase Home Finance LLC, No. CV-11-185-HZ, Op. at pp. 12-13 (D. Or. June 21, 2011), and
thus, plaintiff's claim may be subject to dismissal for failure to state a claim, for the purposes of
this Opinion, I ignore the label plaintiff ascribes to the claim and consider instead the alleged
wrongful acts of failure to record an assignment, issuing an invalid notice of default, and failing
to honor an alleged oral representation to stay the sale during the loan modification re-application
process.

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section . . . .

12 C.F.R. § 560.2(a). Section 560.2(b) lists specific types of state laws which are preempted. Section 560.2(c) lists types of state laws that are not preempted "to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section[.]" 12 C.F.R. § 560.2(c).

In Silvas, the Ninth Circuit applied a method of analysis promulgated by OTS for evaluating whether a state law is preempted under the regulation:

> "When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption."

Silvas, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)).

Silvas involved a claim by mortgage applicants alleging that the lender's policy not to refund lock-in fees after the applicants cancelled the transaction within the time allowed by the Truth in Lending Act (TILA), violated California's statutory Unfair Competition Law. The Ninth Circuit, following OTS's analysis, first looked to see if the type of law at issue was listed in section 560.2(b). Id. at 1006. It noted that subsection (b)(5) preempted state laws purporting to

7 - OPINION & ORDER

impose requirements regarding loan-related fees, including initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees, and that subsection (b)(9) preempted state laws purporting to impose requirements regarding disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, and other similar statements. Id. at 1005, 1006. The court held that the plaintiffs' claim regarding the lender's inclusion of allegedly false information on its website and in media advertisements was entirely based on the lender's disclosures and advertising and thus fell "within the specific type of law listed in § 560.2(b)(9)." Id. at 1006. With that, the preemption analysis ended and the claim was preempted. Id.

The court reached the same conclusion as to the claim that the lender's practice of misrepresenting consumers' legal rights in advertisements and other documents was contrary to the policy of California. Id. That claim was also preempted by section 560.2(b)(9) because the alleged misrepresentation was contained in advertising and disclosure requirements. Id. Finally, the claim that the lock-in fee itself was unlawful was preempted by section 560.2(b)(5) which "specifically preempts state laws purporting to impose requirements on loan related fees." Id.

In the instant case, Wells Fargo argues that under HOLA, plaintiff's "conversion" claim, regardless of which theory it is based upon, is preempted and must be dismissed. In response, plaintiff makes several arguments against preemption including (1) amendments to HOLA have changed the nature and analysis of HOLA preemption; (2) HOLA preemption does not apply to foreclosure actions; (3) Wells Fargo is not a federal savings bank; and (4) HOLA preemption of Oregon's trust deed statutes violates the Tenth Amendment to the United States Constitution.

/ / /

8 - OPINION & ORDER

A.  Amendments to HOLA

On July 21, 2010, Congress passed the "Dodd-Frank Wall Street Reform and Consumer Protection Act."  Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("the Act").  The Act amended 12 U.S.C. § 1465(b) to provide that "[n]otwithstanding the authorities granted under sections 1463 and 1464 of this title, this chapter does not occupy the field in any area of State law."  Pub. L. No. 111-203, Title X, § 1046(a).  Additionally, the Act created a new statutory section, 12 U.S.C. § 5136C, which prescribes a specific preemption analysis, as articulated by the Supreme Court in Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25 (1996), for preemption of state consumer financial laws.  Id. at § 1044.[3]  Plaintiff contends that as a result of the Act, the Silvas analysis and preemption arguments based on 12 C.F.R. § 560.2, no longer apply.

However, Section 1043 of the Act makes clear that the Act does not apply to contracts entered into before the Act's enactment:

> This title, and regulations, orders, guidance, and interpretations prescribed, issued, or established by the Bureau, shall not be construed to alter or affect the applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established by the Comptroller of the Currency or the Director of the Office of Thrift Supervision regarding the applicability of State law under Federal banking law to any contract entered into on or before the date of enactment of this Act, by national banks, Federal savings associations, or subsidiaries thereof that are regulated and supervised by the Comptroller of the Currency or the Director of the Office of Thrift Supervision, respectively.

Id. at § 1043.

The Act was effective July 21, 2010.  Under Section 1043, any contracts entered into on or before that date are not subject to the new legislation.  Plaintiff contends that because the

---

[3]  By its own terms, newly created 12 U.S.C. § 5136C (which appears to have been codified at 12 U.S.C. § 25b), applies to national banks, not federal savings banks.  For the purposes of this Opinion, I assume it applies to federal savings banks.

amendment to 12 U.S.C. § 1465(b) is currently effective, field preemption is no longer part of the HOLA. I disagree. The Act made certain changes, effective upon enactment, but nonetheless specifically and expressly stated that Title X and regulations, orders, etc. to be established under the Act were not to affect the applicability of any regulation regarding any contract entered into on or before July 21, 2010. Plaintiff alleges he executed the Note and Deed of Trust in October 2005. Am. Compl. at ¶ 2[4]. The new provisions of the Dodd-Frank Act do not apply.

### B. HOLA Preemption of Foreclosure Actions

Silvas was not a foreclosure case. Wells Fargo cites to a number of district court cases within the Ninth Circuit in support of its argument that the Silvas preemption analysis applies to foreclosure-related claims. In Guerrero v. Wells Fargo Bank, N.A., No. CV-10-5095-VBF, 2010 U.S. Dist. LEXIS 96261 (C.D. Cal. Sept. 14, 2010), the plaintiffs obtained an equity line of credit from WSB, secured by real property. Id. at *3. After failing to make certain loan payments, a default/election to sell notice was recorded, followed by a trustee's sale notice indicating a sale date of May 13, 2010. Id. at *4. The plaintiffs alleged that on several dates in early May,

---

[4] Plaintiff alleges the loan originated in October 2005, but the actual loan documents show that the loan originated on October 25, 2004. Ex. A to Gissendanner Decl. (Note showing October 25, 2004 date); Ex. B to Gissendanner Decl. (Deed of Trust showing notary witnessed signing on October 29, 2004). Because these documents are public records, they are appropriate for judicial notice under Federal Rule of Civil Procedure 201(b) (judicially noticed fact must be one not subject to reasonable dispute in that it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned). Judicially noticed documents may be considered on a motion to dismiss without converting it to a motion for summary judgment. E.g., Dunn v. Castro, 621 F.3d 1196, 1204 n.10 (9th Cir. 2010) (when considering a Rule 12(b)(6) motion, district court generally may not take into account material beyond the complaint, but exceptions are made for matters of which the court may take judicial notice, and documents the plaintiff "incorporates by reference"); Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010) (in Rule 12(b)(6) motion court "may consider materials incorporated into the complaint or matters of public record"). The discrepancy in the dates is immaterial.

including May 13, 2010, they were instructed to send more information in support of the loan

modification application, and were advised that the trustee's sale had been cancelled.  Id.

Nonetheless, the sale took place on May 13, 2010.  Id.

The plaintiffs brought several claims against the defendants, including claims to set aside

the trustee's sale, to cancel the trustee's deed, to quiet title, for an accounting, estoppel, breach of

contract, breach of the covenant of good faith and fair dealing, fraud, negligence, and declaratory

relief.  Id. at *8.  The court found that HOLA, specifically 12 C.F.R. § 560.2(b), preempted all of

the claims because they all "attack[ed] Defendant's disclosure and initiation of the foreclosure

process."  Id. at *9 (citing DeLeon v. Wells Fargo Bank, N.A., 729 F. Supp. 2d 1119, 1122

(N.D. Cal. 2010) (claim alleging violation of California Civil Code based on failure to give

mortgagor foreclosure sale notice and to publish, post and record the notice, preempted by

HOLA); Curcio v. Wachovia Mortg. Corp., No. 09-CV-1498-IEG, 2009 WL 3320499  (S. D.

Cal. Oct. 14, 2009) (HOLA preempted plaintiff's state law mortgage-related tort, contract, and

other claims which asserted, inter alia, that defendant failed to provide proper TILA loan

disclosures, that the loan documents failed to clearly and conspicuously disclose that timely

payments would result in negative amortization, increasing the principal amount of the loan, and

that defendant refused to modify plaintiff's loan payments); Stefan v. Wachovia, No. C 09-2252

SBA, 2009 WL 4730904, at *3  (N.D. Cal. Dec. 7, 2009) (plaintiff's tort and contract claims

raising eight separate causes of action preempted by HOLA because all claims attacked

defendant's initiation of the state non-judicial foreclosure process)).

As the citations in the preceding paragraph show, several district courts in California have

concluded that HOLA preempts state law claims attacking various alleged deficiencies in the

non-judicial foreclosure process.  Plaintiff argues that the claims here are distinguishable from the claims at issue in the California cases because in those cases, the plaintiffs raised procedural errors regarding various notices required by California law, and here, plaintiff contends that Wells Fargo never possessed the right to non-judicially foreclose, or if it did, it did not possess the right at the time it foreclosed.  Moreover, even as to the "procedural-type" claims, plaintiff contends there is a split within the Northern District of California, as revealed in <u>Wienke v. Indymac Bank, FSB</u>, No. CV 10-4082 NJV, 2011 WL 871749 (N.D. Cal. Mar. 14, 2011), regarding the preemptive effect of HOLA.  Thus, plaintiff contends that the California cases holding that HOLA preempts foreclosure claims are not relevant in determining whether HOLA preempts Oregon foreclosure claims.

In <u>Wienke</u>, the plaintiff brought a TILA claim and several state causes of action based on the defendant's alleged failure to provide notice regarding the trustee sale and the defendant's having initiated the foreclosure before contacting plaintiff and exploring alternatives.  <u>Id.</u> at *2.  The plaintiff also brought an unlawful business practices claim under California's Business & Professions Code § 17200, based on a "wrongful foreclosure," a violation of TILA, and a failure to make a loan modification offer in good faith.  <u>Id.</u> at *6.

The court dismissed the notice-related claims for failure to state a claim because the plaintiff failed to allege specific facts regarding the notice issues.  <u>Id.</u> at *4.  The court also noted that other cases in the Northern District of California had held that claims for failure to provide notice and to publish, post, and record certain notices before a non-judicial foreclosure sale, were preempted by HOLA.  <u>Id.</u>  In its dismissal, the court allowed the plaintiff to re-plead the "notice-related" claims "should Plaintiff be able to cure the complaint's deficiencies and <u>overcome the</u>

potential preemption by HOLA[.]" Id. (emphasis added).

Next, the court discussed the claim alleging that the lender failed to contact the plaintiff to assess his financial situation and explore alternatives to foreclosure. Id. at 5. The court cited to a California state case which had previously recognized a private right of action for such a claim and had construed the statute in such a way to conclude that the right was not preempted by federal law. Id. (citing Mabry v. Superior Ct., 185 Cal. App. 4th 208, 2214, 225-30, 110 Cal. Rptr. 3d 201 (2010)). Notably, the Wienke court dismissed the claim for failure to state a claim.

The Wienke court then considered plaintiff's claim under section 17200 of California's Business Code. Id. at *7-10. After dismissing the section 17200 claim for failure to state a claim, the court considered the defendant's argument that HOLA preempted the section 17200 claim based on TILA violations and the denial of a loan modification. Id. at *7. The Wienke court explained that Silvas could not be read as holding that "all § 17200 claims based on any TILA violation are preempted" when the Silvas court had based its preemption holding on two categories of state law that were expressly preempted by 12 C.F.R. §§ 560.2(b)(5), (b)(9) and which were directly related to the misconduct alleged by the plaintiff borrowers. Id. The court noted that two other district courts in California had held that section 17200 claims based on loan modification were preempted by HOLA. Id. at 10. It then stated that because it was dismissing the section 17200 claim on other grounds, it declined to determine the preemption issue. Id. It explained that if the plaintiff filed an amended complaint and if the defendant moved to dismiss it, the court would welcome more detailed briefing on the preemption of the section 17200 claim. Id.

Plaintiff overstates the holding of Wienke. Given that the claims in that case were

13 - OPINION & ORDER

dismissed for failure to state a claim, the preemption discussions are <u>dicta</u>.  And, the court appears to have accepted a California state court's determination on the preemption of a particular type of California Civil Code claim, but without discussing why that holding applied to only that type of claim and not to the other claims based on California statutes.  Moreover, as other district courts have noted, <u>Mabry</u> is not binding on a federal district court on the issue of federal preemption.  <u>E.g.</u>, <u>Beall v. Quality Loan Serv. Corp.</u>, No. 10-1900, 2011 WL 1044148, at*7-8 (S.D. Cal. Mar. 21, 2011); <u>see also</u> <u>Taguinod v. World Sav. Bank, FSB</u>, 755 F. Supp.2d 1064, 1074 (C.D. Cal. 2010) ("overwhelming weight of authority" has held that the type of claim at issue in <u>Mabry</u> is preempted by HOLA).  Furthermore, the preemption discussions in <u>Wienke</u> are not a wholesale discard of the <u>Silvas</u> analysis.  Thus, I do not read <u>Wienke</u> as establishing a split within the Northern District of California.  It is of little relevance here.

The only Oregon case I have found regarding HOLA preemption was decided in March 2011 by Judge Aiken.  In <u>Thomas v. OneWest Bank, FSB</u>, No. CV-10-6234-AA, 2011 WL 867880 (D. Or. Mar. 10, 2011), the plaintiffs, at the urging of their lender, amended their loan to one with an adjustable interest rate.  Although the new loan agreement allegedly provided a fixed rate for the first five years, with the adjustments occurring thereafter, the lender allegedly began charging a monthly payment based on a higher adjusted rate before the five years expired.  The plaintiffs failed to make timely payments and a notice of default, followed by notice of sale, was issued.

The plaintiffs sought a temporary restraining order and preliminary injunctive relief based on claims of  fraud, unfair trade practices, and equitable estoppel.  <u>Id.</u> at *1.  The plaintiffs voluntarily dismissed the unfair trade practices claim.  Judge Aiken then concluded that HOLA

preempted the fraud and equitable estoppel claims because they both required the court to "look into the manner in which a federal bank marketed and processed a refinancing, which directly relates to the lending practices of federal banks," an inquiry which under "the <u>Silvas</u> analysis . . . is precluded by HOLA." <u>Id.</u> at *5 (citing 12 C.F.R. §§ 560.2(b)(9), (10)).[5]

Judge Aiken's case is similar to the instant case because the plaintiffs in <u>Thomas</u> and plaintiff here contend that the non-judicial foreclosure process or a part of it, was invalid for reasons other than flaws in the notice of default or trustee sale documents. Thus, in Oregon, there is precedent for HOLA preemption of "disclosure-document" foreclosure claims based on HOLA.

Additionally, other courts have held that HOLA preempts claims similar to those asserted here. As noted above, <u>Guerrero</u> involved similar facts and claims regarding an alleged promise to cancel a previously-scheduled trustee's sale while a loan modification was pending. Additionally, in <u>Parcray v. Shea Mortgage, Inc.</u>, No. CV-F-09-1942 OWW/GSA, 2010 WL 1659369, at *4-8 (E.D. Cal. Apr. 23, 2010) , the court held that HOLA preempted the plaintiff's claim which included allegations that MERS was not a beneficiary under the trust deed and that the note was unenforceable by the loan servicer. In <u>Parmer v. Wachovia</u>, No. 11-0672, 2011 WL 1807218, at * 1 (N.D. Cal. Apr. 22, 2011), HOLA preempted claims to set aside a trustee's sale and cancel the trustee's deed, and for promissory estoppel, which were based on the defendant's

---

[5] In Judge Aiken's case, the parties stipulated that the preemption analysis of section 560.2(c), as described in <u>Silvas</u>, applied. <u>Thomas</u>, 2011 WL 867880, at *3. However, Judge Aiken cited section 560.2(b) and specific subsections of (b)(9) and (b)(10), and also cited to cases which were decided under subsection (b), not subsection (c). <u>Id.</u> at *5. In its briefing, Wells Fargo alternatively argues that even if the subsection (c) analysis were used in this case, the claims would be preempted because the state claims more than "incidentally affect" lending operations. As explained below, I agree with Wells Fargo.

15 - OPINION & ORDER

alleged wrongful acts in executing a foreclosure sale pursuant to the deed of trust, and in making misleading representations concerning a loan modification with respect to the property.  Finally, in <u>Stefan</u>, with the exception of a Fifth Amendment constitutional claim, the plaintiff brought claims in which he alleged that the defendant used foreclosure in a wrongful manner, prematurely forced the sale of the property, attempted the foreclosure without addressing plaintiff's contractual rights, failed to refrain from foreclosure, and wrongfully instituted foreclosure. <u>Stefan</u>, 2009 WL 4730904, at *3.  All of these claims were preempted by HOLA.  <u>Id.</u>

Plaintiff's first theory in support of his conversion claim is based on an alleged failure of WSB to record an assignment of its beneficial interest to Wells Fargo.  Under the OTS regulation, state laws purporting to impose requirements regarding security property, regarding disclosures made in credit-related statements, and regarding "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages, are preempted.  12 C.F.R. §§ 560.2(b)((7), (9), and (10).  If HOLA applies to Wells Fargo, discussed below, HOLA preempts this claim.

The next theory plaintiff articulates in support of his claim is based on Cary having no authority to sign the notice of default as successor trustee because the notice of appointment of successor trustee was not recorded when the notice of default was issued.  HOLA also precludes this claim because state laws regarding processing and servicing a mortgage are preeempted under 12 U.S.C. § 560.2(b)(10).

Plaintiff's third theory contends that Wells Fargo breached the Deed of Trust by foreclosing when plaintiff was not in default having allegedly obtained an agreement to stay the foreclosure pending the re-application of the loan modification.  Because of a lack of clarity in

16 - OPINION & ORDER

the Amended Complaint, I cannot tell if this part of plaintiff's claim alleges (1) a breach of the

Deed of Trust based on Wells Fargo foreclosing when there was no default as a result of an

alleged setover of the foreclosure sale, or (2) a breach of a subsequent oral modification based on

Wells Fargo foreclosing when it allegedly represented it would setover the sale.  Under either

theory, the claim is preempted.

      Defendant noted in oral argument that while preemption under the OTS regulation is

broad, it does not reach a claim alleging a straightforward breach of a contract between private

parties, including a lender and borrower who are parties to a promissory note, secured by a deed

of trust.  See Davis v. Chase Bank U.S.A., N.A., 650 F. Supp. 2d 1073, 1086-87 (C.D. Cal. 2009)

(National Banking Act (NBA) did not preempt contract-based claims because those claims did

not force the lender to set its contracts in a certain way, but to adhere to the contracts it creates,

thus the claims had at most only an incidental effect on the exercise of the bank's lending

powers); Thomas, 2011 WL 867880, at *4-5 (distinguishing breach of contract claim in HOLA

preemption analysis because such a claim requires the court to look only into the terms of the

contract and whether the bank violated those terms, making the inquiry one of general

applicability to business transactions and only incidentally affecting lending).

      Here, however, whichever way plaintiff's allegations are cast, they do not involve a claim

brought directly against Wells Fargo for breach of a term of the Deed of Trust.  If plaintiff's claim

alleges that Wells Fargo breached the Deed of Trust because it foreclosed in the absence of a

default, the claim is preempted because the claim is based on an alleged representation made by

Wells Fargo in the course of servicing the loan and regarding its secured property.  If plaintiff's

claim alleges that Wells Fargo breached a subsequent oral modification to the Deed of Trust, the

17 - OPINION & ORDER

same result occurs: the claim is preempted because it is based on an allegation that Wells Fargo made a particular representation in the course of servicing the loan and regarding its secured property.

The OTS regulation preempts state laws imposing requirements regarding the terms of credit, including the circumstances under which a loan may be called due and payable. 12 C.F.R. § 560.2(b)(4). It also preempts state laws which regulate security property, and which regulate the processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages. 12 C.F.R. §§ 560.2(b)(7), (10). Because either contract theory relies on the alleged representation/modification by Wells Fargo, the claim no longer uses state law to enforce the original agreement between the parties, but rather requires the court to look into (1) the manner in which Wells Fargo processed and serviced its loan, (2) the circumstances under which the loan may be called due and payable, and/or (3) the manner in which Wells Fargo managed its secured property. The claim is preempted.

Finally, even if none of plaintiff's claims are preempted under subsection 560.2(b), I conclude that they are still preempted under subsection 560.2(c) because each of plaintiff's theories of alleged wrongdoing implicates state laws which affect lending, creating a presumption of preemption, and which directly affect Wells Fargo's lending operations in a significant way, thus having more than an incidental affect on lending operations.

C.  Application to Wells Fargo

Plaintiff contends that because Wells Fargo is not a federal savings bank, HOLA does not apply to its actions. Several district courts within the Ninth Circuit have rejected plaintiff's argument regarding HOLA's application to Wells Fargo as the successor to WSB and Wachovia.

In Guerrero, 2011 U.S. Dist. LEXIS 96261, the plaintiffs disputed Wells Fargo's status as a federal savings association.  It was undisputed that the plaintiffs received their loan from WSB. Id. at *8.  Relying on documents supplied by the defendant which the court judicially noticed, the court explained that WSB was a federal savings bank at the time of the origination of the loan, that on December 31, 2007, WSB changed its name to Wachovia Mortgage, and that on November 1, 2009, it merged into Wells Fargo Bank.  Id.  The court concluded that "[w]here a national association, such as Defendant, acquires the loan of a federal savings bank, it is proper to apply preemption under HOLA."  Id. (citing cases); see also Parmer, No. C 11-0672 PJH, 2011 WL 1807218, at *1 (judicially noticed documents demonstrated that WSB was federally chartered by OTS as a federal savings bank, as was its successor, Wachovia, which then merged into Wells Fargo; accordingly, "[WSB], Wachovia, and its successor Wells Fargo, were subject to HOLA with respect to the origination and ownership of plaintiff's loan, and any claims asserted by plaintiff related to the origination of his underlying loan, the disclosures made in connection therewith, or the servicing or processing of the loan or its sale to a subsequent purchaser, are all preempted"); Appling v. Wachovia Mortg., FSB, 745 F. Supp. 2d 961, 971 (N.D. Cal. 2010) (documents showed WSB was a federal savings association subject to HOLA and OTS regulations, which changed it name to Wachovia and which was now a division of Wells Fargo; "although Wells Fargo itself is not subject to HOLA and OTS regulations, this action is nonetheless governed by HOLA because Plaintiff's loan originated with a federal savings bank and was therefore subject to the requirements set forth in HOLA and OTS

regulations").[6]

Here, Wells Fargo submits the Declaration of Roy Gissendanner, Wachovia Mortgage's Custodian of Records. Gissendanner states that Wachovia Mortgage was formerly known as Wachovia Mortgage, F.S.B., and it is now a division of Wells Fargo. Gissendanner Decl. at ¶ 1. Appended to Gissendanner's Declaration are copies of the original Note and Deed of Trust at issue in this case, which Gissendanner retrieved from Wachovia Mortgage's storage files. Id. at ¶ 2; Exs. A & B to Gissendanner Decl. The Note identifies the lender as "World Savings Bank, FSB, a Federal Savings Bank." Ex. A to Gissendanner Decl at p. 1. The Deed of Trust also identifies WSB as the lender and states that the lender is a "Federal Savings Bank." Ex. B to Gissendanner Decl. at p. 1.

Documents from the Federal Deposit Insurance Commission (FDIC), submitted by Wells

---

[6] Wells Fargo alternatively argues that even if the National Banking Act (NBA) rather than HOLA applied to Wells Fargo, the preemption would be the same. See DeLeon, 2011 WL 311376, at *4 n.2 (preemption under the NBA and its implementing regulations would be the same as preemption under HOLA and OTS regulations). As explained in Parmer:

> To the extent that successor Wells Fargo's status as a national bank, rather than a federally chartered federal savings bank, is deemed significant for purposes of preemption, it is sufficient to note that the preemptive scope of the National Bank Act ("NBA")—pursuant to which the Office of the Comptroller of the Currency ("OCC") is charged with supervision of national banks—and HOLA have the same effect. See NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 256, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995); see also, e.g., Aguavo v. U.S. Bank, 2009 WL 3149607, *3 (S.D.Cal.2009) (citing 12 U.S.C. § 93a; 69 Fed.Reg.1904, 1907 (January 13, 2004)). Furthermore, the regulations applicable to national banks pursuant to the National Bank Act are substantially the same as those set forth under HOLA. See 12 C.F.R. § 34.4 []. Accordingly, the court's preemption analysis remains the same.

Parmer, 2011 WL 1807218, at *1 n.1. Because I find HOLA applicable here, I do not consider Wells Fargo's alternative argument based on the NBA.

Fargo, show that WSB was established in 1987, changed its name to Wachovia Mortgage, FSB in 2007, and merged into Wells Fargo in 2009.  Ex. 2 to Deft's Reply.  The FDIC identifies Wells Fargo as the "active successor institution" to WSB.  Ex. 1  to Deft's Reply.

Because the FDIC documents are public records, they are appropriate for judicial notice under Federal Rule of Civil Procedure 201(b) .  Based on the statements by Gissendanner, the public documents, and the relevant case law from other district courts within the Ninth Circuit, I agree with Wells Fargo that HOLA applies to plaintiff's claims against Wells Fargo.

D.  Tenth Amendment

Plaintiff argues that the preemption of Oregon's trust deed statutes violates the Tenth Amendment which provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const. amend. X.  Plaintiff cites no cases holding that HOLA preemption of state real property laws violates the Tenth Amendment and I have found none.

In an analogous case, however, the Supreme Court rejected an argument that a regulation implementing the NBA violated the Tenth Amendment.  Watters v. Wachovia Bank, N.A., 550 U.S. 1, 22 (2007).  The Court noted the general proposition that "if a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States."  Id. (internal quotation omitted and brackets).  Because "[r]egulation of national bank operations "is a prerogative of Congress under the Commerce and Necessary and Proper Clause," the Tenth Amendment was "not implicated[.]"  Id.

Similarly, Congress's regulation of federal savings associations must be grounded in the Commerce Clause, thus coming within the powers granted to Congress by the Constitution.  The

Tenth Amendment is not implicated here.

Because I conclude that HOLA preempts all of plaintiff's claims, I do not consider the

alternative arguments Wells Fargo raises as to the merits of the claims.

CONCLUSION

Wells Fargo's motion to dismiss [#14] is granted.

IT IS SO ORDERED.

Dated this __5th___ day of __July_____, 2011

_/s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge

22 - OPINION & ORDER