IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TOBIN COPELAND-TURNER,

        Plaintiff,

     v.                            No.  CV-11-37-HZ

WELLS FARGO BANK, N.A., a foreign
bank, GORILLA CAPITAL, INC., a            OPINION & ORDER
foreign corporation, and NANCY K.
CARY, an individual,

        Defendants.


Alex Golubitsky
CASE & DUSTERHOFF, LLP
The 9800 Professional Building
9800 S.W. Beaverton Hillsdale Hwy., Suite 200
Beaverton, Oregon 97005

      Attorney for Plaintiff


1 - OPINION & ORDER

Robert J. Bocko
KEESAL, YOUNG  & LOGAN
1301 Fifth Avenue, Suite 1515
Seattle, Washington 98101

      Attorney for Defendant Wells Fargo Bank

HERNANDEZ, District Judge:

      Plaintiff Tobin Copeland-Turner brought this foreclosure-related action against defendants Wells Fargo Bank, N.A., Gorilla Capital, Inc., and Nancy Cary.  In a July 5, 2011 Opinion, I granted defendant Wells Fargo's motion to dismiss based on federal preemption. Plaintiff then voluntarily dismissed the other defendants and a Judgment in favor of defendants was entered August 5, 2011.

      Wells Fargo now seeks a determination that it is entitled to fees under the Promissory Note ("the Note") and/or Deed of Trust (DOT).  It will separately move for the actual fees if it is successful in this motion.  For the reasons explained below, I grant Wells Fargo's motion.

      Plaintiff brought this action in January 2011 after his rental property was sold in a non-judicial foreclosure sale in October 2010.  Plaintiff generally contended that a representative of Wachovia (which was later taken over by Wells Fargo), told plaintiff that a loan modification request had been denied, but that plaintiff could re-apply, and that while his re-application was pending, no foreclosure sale would occur.  Then, plaintiff alleged, the sale occurred anyway.

      In his initial Complaint, plaintiff brought the following claims:  (1) breach of contract (alleging breach of the promise not to foreclose while re-application for loan modification was pending); (2) breach of contract - third party beneficiary (alleging plaintiff was a third-party beneficiary of Wells Fargo's agreement with Fannie Mae under a federal loan modification

2 - OPINION & ORDER

program); (3) unlawful trade practices in violation of state statutes; (4) fraud; (5) negligent

misrepresentation; (6) wrongful foreclosure; and (7) violation of Oregon Revised Statute §

(O.R.S.) 86.737 which is part of the Oregon Trust Deed Act.

After defendants removed the action to this Court, plaintiff amended his Complaint.  The

factual allegations remained largely the same, but plaintiff pleaded only a single claim of

conversion.  However, as I explained in the July 6, 2011 Opinion, that claim was based on three

different theories:  (1) the foreclosure initiated by Wells Fargo was invalid because there was no

assignment of beneficiary from World Savings Bank (WSB), the original lender and original

beneficiary of the DOT, to Wells Fargo as required by Oregon law; (2) defendant Nancy Cary

was not the successor trustee when the notice of default was filed, invalidating the notice of

default; and (3) Wells Fargo breached the alleged oral promise to stay foreclosure while the re-

application modification was pending.  In the Amended Complaint, plaintiff sought complete

rescission of the sale and an injunction prohibiting a further sale.  Alternatively, plaintiff sought

$145,000 in damages.

Although I indicated that claims based on an alleged wrongful foreclosure of real property

could not be considered conversion claims because real property is not chattel, July 6, 2011 Op.

at p. 5 n.2, I chose to ignore the label that plaintiff had ascribed to the claim and instead,

considered the actual alleged wrongful acts which I described as failure to record an assignment,

issuing an invalid notice of default, and breaching an oral agreement to stay the sale during the

loan modification re-application process.  Id.  I dismissed the Complaint because I agreed with

defendant that the federal Home Owners' Loan Act (HOLA), preempted plaintiff's claim(s).

Wells Fargo relies on the following provisions in asserting its right to collect attorney's

fees from plaintiff:

> **Payment of Lender's Costs and Expenses**
> The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

Note at § 7(F) (attached as Ex. A to Gissendanner Decl. in support of Deft's Mtn to Dismiss) (dkt #16).

> **LENDER'S RIGHT TO PROTECT ITS RIGHT IN THE PROPERTY**
> If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees . . . .
>
> I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender.

Deed of Trust at ¶ 7 (attached as Ex. B to Gissendanner Decl. in support of Deft's Mtn to Dismiss) (dkt #16).

Wells Fargo argues that under the terms of the Note and DOT, plaintiff expressly agreed to pay the attorney's fees that defendant incurred in the course of this lawsuit. In support, Wells Fargo cites to several cases from district courts in California which have awarded fees to Wells Fargo under similar circumstances and identical fee provisions.

In Smith v. World Savings & Loan Ass'n, No. 10-CV-02855 JAM-JFM, 2011 WL 1833088 (E.D. Cal. May 12, 2011), the plaintiff filed an action against the defendant "following

4 - OPINION & ORDER

Defendant's foreclosure activity." Id. at *1. After granting the defendant's motion to dismiss, the court considered the defendant's motion for attorney's fees. The court noted that generally, under the "American rule," the prevailing litigant is not entitled to collect fees from the losing party, but a statute or enforceable contract can overcome that rule. Id. Then, based on the fee provisions in the promissory note and the deed of trust at issue in the case, which are identical to the fee provisions in the Note and DOT here, the court awarded fees. The court explained that "[b]ecause plaintiff's lawsuit attacked the mechanics of Defendant's ownership of the Note, the non-judicial foreclosure, and the mechanism by which Defendant became the beneficiary under the DOT, Defendant had to protect its interests in the Property. Thus, Plaintiff's action falls within the scope of the fee clause in the Note and the DOT." Id. at *2.

Similarly, in Nguyen v. Wells Fargo Bank, No. C-10-4081-EDL, 2011 WL 9322 (N.D. Cal. Jan. 3, 2011), the court considered the same fee provision as contained in the Note here, and awarded fees to the defendant in a case where the plaintiff brought claims alleging wrongful foreclosure, violation of a California statute, fraudulent misrepresentation, fraudulent concealment, unconscionability, quiet title, conversion, and declaratory and injunctive relief. The plaintiff argued that some of the claims were not contractual and thus, no fees could be awarded for them. The defendant argued that the claims were either "on the contract," or intertwined with the contract claims so that contractual attorney's fees were appropriate as to all claims. The court adopted the defendant's position. The court concluded that all of the plaintiff's claims directly related to the defendant's enforcement of the note through foreclosure. Id. at 3. The court noted that the non-contract claims incorporated by reference the allegations which supported the contract claims and that the plaintiff sought rescission of the loan and cancellation

5 - OPINION & ORDER

of the note and deed of trust, as well as an injunction against foreclosure without "tethering"

these contract-related remedies to a particular claim.  Id.

Plaintiff argues that whatever right Wells Fargo had to collect attorney's fees under the

DOT was extinguished when it foreclosed on plaintiff's property non-judicially.  Plaintiff also

contends that his claim against Wells Fargo was not based on contract but rather was a tort claim

for violating a statute and therefore, there is no contractual right for Wells Fargo to receive

attorney's fees.

As to the first argument, plaintiff contends that Wells Fargo's seeking of attorney's fees is

akin to a party seeking its attorney's fees for a deficiency judgment following a foreclosure which

is prohibited by statute and by the doctrine of "election of remedies."  O.R.S. 86.770 prohibits an

action for a deficiency following a trustee's sale in a non-judicial foreclosure:

> . . .  [A]fter a trustee's sale under ORS 86.705 to 86.795 . . ., an action for a
> deficiency may not be brought or a judgment entered against the grantor, the
> grantor's successor in interest or another person obligated on:
>
>> (a) The note, bond or other obligation secured by the trust deed for the
>> property that was subject to the trustee's sale[.]

O.R.S. 86.770(2).

Plaintiff argues that Wells Fargo's right to claim attorney's fees under the Note was

extinguished with the non-judicial foreclosure.  In support, plaintiff relies on Cottage Grove

Apartment Investors v. Brandenfels, 69 Or. App. 192, 684 P.2d 1235 (1984).  There, the trial

court granted the plaintiff's motion for summary judgment in a judicial foreclosure action, and

expressly held that any judgment awarded to the plaintiff for costs and disbursements "incurred

herein" would survive the foreclosure sale.  The court of appeals reversed, holding that the

portion of the judgment that was for attorney fees, costs, and disbursements and was not satisfied from the proceeds of the sheriff's sale was a "deficiency judgment" barred by O.R.S. 86.770(2), Id. at 198, 684 P.2d at 1238-39.

Cottage Grove is not on point because in contrast to the facts there, Wells Fargo did not seek a deficiency in this case after the foreclosure sale. As Wells Fargo notes, the attorney's fees at issue here are those borne by Wells Fargo as a result of plaintiff initiating the litigation against Wells Fargo, not because Wells Fargo sought a deficiency against plaintiff. The facts do not support plaintiff's argument that the fees sought by Wells Fargo are "akin" to a deficiency. They arise as a result of plaintiff's challenge to the foreclosure, not because Wells Fargo sought to recoup its costs and fees incurred in foreclosing the property.

Plaintiff also argues that based on the "election of remedies" doctrine, Wells Fargo cannot seek fees. But, this argument presupposes that the fee request is analogous to seeking a deficiency, which it is not. Thus, any "election of remedies" argument also is unavailing.

As to the second argument, plaintiff argues that the conversion claim he brought in the Amended Complaint is not a claim based on contract and thus, the contractual fee provisions in the Note and the DOT do not apply. Plaintiff argues that he brought only a tort claim against Wells Fargo, contending that Wells Fargo violated various state statutory provisions governing trust deeds. Because he did not allege that Wells Fargo breached its contract and he did not seek damages under the contract, he contends that Wells Fargo may not rely on the contractual attorney fee provisions.

Plaintiff relies on two Oregon Court of Appeals cases for support. In Cascade Steel Fabricators, Inc. v. Citizens Bank of Or., 46 Or. App. 573, 577-78, 612 P.2d 332, 224 (1980), the

7 - OPINION & ORDER

plaintiff was a customer of the defendant bank, having established a line of credit and having

obtained loans from the bank.  The plaintiff was struggling financially and met with a bank

officer to renegotiate its loans and to seek additional financing.  The bank officer told the

plaintiff that it "should be no problem," but also that he would have to talk to his supervisors.  Id.

at 575, 612 P.2d at 332-33.  A few days later, the bank closed plaintiff down and assumed control

of the inventory, equipment, and other collateral securing the defendant's loans to the plaintiff.

The plaintiff conceded that the bank was entitled to take that action.  Id. at 575, 612 P.3d at 333.

        The plaintiff then brought a tort action, contending that the bank acted in bad faith when

it demanded payment without prior notice and then foreclosed on the collateral after assuring the

plaintiff that further financing was forthcoming.  Id. at 575-76, 612 P.2d at 333.  The trial court

dismissed the claim, and the court of appeals affirmed.  The court explained that there was no

false advice or information given that the additional financing was forthcoming and no

encouragement to act or rely on such advice.  Id. at 577, 612 P.2d at 333.  Although the bank

official had told the plaintiff he did not see any problem, he had also said that he would have to

consult his superiors.  There was no "willful wrong" and no tort was committed.  Id.

        The court of appeals also affirmed the trial court's denial of the defendant's request for

attorney's fees.  The defendant contended that the credit agreements executed by the parties

entitled the defendant to recover attorney's fees because the plaintiff's action was based on those

agreements.  The court rejected that argument and agreed with the plaintiff that its claim was in

tort for failure to act in good faith.  Because the plaintiff was not seeking to enforce any

provision of the inventory sale agreement or the security agreement, the contractual fee

provisions did not apply.  Id. at 577-78, 612 P.2d at 334.

8 - OPINION & ORDER

In <u>Harris v. Cantwell</u>, 47 Or. App. 211, 614 P.2d 124 (1980), the plaintiff purchased a semitractor from the defendant under a contract which set forth a payment schedule and included a provision allowing the seller to repossess the tractor in the event of default. The plaintiff was late making certain payments and made one payment with a bad check. The defendant went to repossess the tractor and found it connected to a loaded trailer in front of the plaintiff's house. The defendant drove away with the tractor after he unlocked it from the trailer.

The plaintiff brought a claim of conversion, seeking damages for the value of the tractor and the loss of its use. In answering the claim, the defendant relied on the terms of the contract and contended that the plaintiff had breached those terms entitling the defendant to repossess the tractor. The plaintiff replied that the defendant had waived his right to repossess without notice and that the repossession was unlawful because the defendant had committed a breach of the peace in carrying out the repossession. The trial court denied the defendant's motion for a directed verdict on the breach of the peace issue and the jury returned a verdict in the plaintiff's favor. On appeal, the court affirmed the trial court's denial of the directed verdict motion because there were questions of fact for the jury regarding when the defendant took possession of the tractor in relationship to the confrontation with the plaintiff. <u>Id.</u> at 214, 614 P.2d at 126.

The plaintiff also sought attorney's fees under the contract. He argued that because he prevailed on the defendant's argument that the terms of the contract gave the defendant a right to possess the tractor, he was entitled to attorney's fees under a provision in the contract that allowed attorney's fees in the "event suit or action is instituted to collect any sum or sums or money due hereunder or to replevy said vehicle, . . . " <u>Id.</u> at 216, 614 P.2d at 126. The court of appeals agreed with the trial court that the plaintiff was not entitled to fees. The court explained

9 - OPINION & ORDER

that the contractual fee provision limited recovery of fees to instances where a suit or action was

instituted to collect sums of money due under the contract or to replevy the vehicle.  The claim

that the plaintiff had brought was neither to collect money under the contract nor to replevy the

vehicle.  Rather, the plaintiff's action was in tort.  Id.  The contract was at issue only because the

defendant relied on it in support of an affirmative defense.  Id.  The court noted that the

"[p]laintiff prevailed in his tort action and incidentally prevailed on the defense." Id.; see also

Worthington v. Lick, 783 F.2d 1369, 1370 (9th Cir. 1986) (citing Harris for the proposition that

"where a plaintiff's cause of action is in tort, even if the defendant raises a contract issue as an

affirmative defense, no recovery of attorney fees is allowed because the contract is only an

incidental issue").

      Plaintiff relies on the above cases to argue that the Note and the DOT were incidental

issues in this case and raised only as to defendant's defense that federal law, not Oregon law,

applied to the controversy to preempt plaintiff's claim.  Plaintiff contends that as seen in Harris, a

conversion claim with an underlying contract between the parties does not make a contract claim.

Therefore, plaintiff argues, there is no basis for attorney's fees.

      I disagree.  The cases indicate that whether a contractual attorney fee award applies is a

fact specific determination based on the nature of the claim and the actual terms of the attorney's

fees provision.  In Cascade Steel Fabricators, the plaintiff conceded that the bank's action in

repossessing the inventory and equipment was allowed.  The claim brought by the plaintiff was

an entirely separate action which challenged the manner in which the bank determined that

repossession was appropriate.  The issue was whether the alleged misleading representation by

the bank employee gave rise to tort liability because of any willful bad faith.  The underlying

10 - OPINION & ORDER

right to repossess was not at issue.

In Harris, the tort claim focused on the value of the loss of the tractor. The claim clearly was not seeking payments under the contract and was not seeking a return of the tractor. While the defendant's contractual right to repossess the tractor was at issue because of the defendant's defense, the plaintiff's claim relied on proof that the defendant breached the peace during the repossession and failed to give notice, forfeiting the defendant's repossession rights. As a result, the claim was not a collateral attack on the defendant's right to repossess. The attorney's fee provision was very specific as to what kind of actions supported an award of attorney's fees. Because neither of those actions was a basis for the plaintiff's tort claim, the attorney's fee provision was not implicated.

Cascade Fabricators and Harris do not support plaintiff's argument because in contrast to those cases, plaintiff's claim attacked Wells Fargo's interest in the property, an interest Wells Fargo possessed by virtue of the Note and the DOT, and because the attorney's fee provision, at least in the DOT, is broad and by its terms applies to legal proceedings brought by the plaintiff that may affect Wells Fargo's rights in the property. Plaintiff's claim was based on an alleged invalid beneficial interest, an alleged invalid notice of default, and an alleged oral representation regarding the foreclosure sale (a right granted to the defendant by the DOT) made by the bank while discussing a modification to the loan. While plaintiff may have styled his claim as one for "conversion" based on alleged violations of Oregon's Trust Deed Act, plaintiff's theories of liability all went to whether defendant had a valid interest in the property and had a right to foreclose under the Note and the DOT.

It cannot be disputed that the only subject of plaintiff's action was the foreclosure which

11 - OPINION & ORDER

was the exercise of Wells Fargo's rights to the property in the event of default, as specified in the

loan documents.  All of the claims in the initial Complaint, and the theories that remained in the

Amended Complaint, centered upon the loan, the foreclosure, and plaintiff's attempts to obtain a

loan modification.  Notably, plaintiff sought rescission of the foreclosure sale as his remedy for

the "conversion" claim.  But, rescission is an equitable remedy used in contract cases, suggesting

that plaintiff himself understood his claim to be based on the parties' contractual rights.  See

Generaux v. Dobyns, 205 Or. App. 183, 194, 134 P.3d 983, 989 (2006) ("Mistake, like fraud, is a

well-recognized equitable ground for rescission of a contract or other instrument."); Gangnes v.

Lang, 104 Or. App. 135, 137, 749 P.2d 670, 671 (1990) (rescission is an equitable remedy); see

also Sweeney v. SMC Corp., 178 Or. App. 576, 588, 37 P.3d 244, 251 (2002) ("In traditional

terms, rescission places the parties in the positions that they occupied before the transaction

occurred; damages, in contrast, make a plaintiff whole for harm that the plaintiff has suffered.").[1]

Plaintiff's claims in this case are like those in Smith and Nguyen because they challenged Wells

Fargo's enforcement of the Note through foreclosure.

Finally, the DOT attorney fee provision is broad, encompassing legal proceedings brought

by plaintiff that may significantly affect Wells Fargo's rights in the property.  Given that the

---

[1] Also, in the original Complaint where plaintiff brought a breach of contract claim
against Wells Fargo for allegedly breaching the alleged oral representation that the foreclosure
sale would be stayed pending plaintiff's renewed modification application, plaintiff himself cited
to the Note and DOT for a right to attorney's fees.  Compl. at ¶ 12.  Although the "breach of
contract" claim was eliminated in the Amended Complaint, the allegations in support of that
claim remained the same and were simply recast as a basis for arguing that defendant had no
valid interest in the property and thus, was liable for conversion.  This further suggests that the
attorney's fees provisions in the Note and the DOT apply to the claim he brought in the Amended
Complaint.

12 - OPINION & ORDER

subject matter of the allegations in the Amended Complaint was the contractual loan transaction between Wells Fargo (or its predecessors in interest) and plaintiff, and that the governing loan transaction documents allow for attorney's fees to Wells Fargo in this type of case, Wells Fargo is entitled to the attorney's fees it incurred in defending itself in this action.

CONCLUSION

Wells Fargo's motion for attorney's fees [36] is granted. Wells Fargo shall submit its motion for an award of attorney's fees with appropriate documentation within twenty-one (21) days from the date of this Opinion & Order.

IT IS SO ORDERED.

Dated this ___25th___ day of ___October_____, 2011

/s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge

13 - OPINION & ORDER